653 So.2d 653 (1995)
Mary Hotard, Wife of/and E.L. HOLMES
v.
PARISH OF ST. CHARLES.
No. 94-CA-844.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 1995.
*654 William J. Dutel, Richard R. Schulze, New Orleans, for plaintiffs-appellees.
R.O. Lewis, Director of Legal Services, Luling, for defendant-appellant.
Before KLIEBERT, GAUDIN and CANNELLA, JJ.
KLIEBERT, Chief Judge.
The defendant, St. Charles Parish, appeals the trial court's finding that the transaction by which plaintiffs, Mary Hotard Holmes and E.L. Holmes (the Holmeses) conveyed immovable property to the Parish was an onerous donation inter vivos and not a dedication. The trial court, in finding the former, revoked the donation for the donee's failure to fulfill the condition of the donation, the construction of the proposed East-West Roadway on the East bank of St. Charles Parish. Defendant, St. Charles Parish, appeals, contending that the trial court erred in failing to find that the land was dedicated for public use; that the trial court erred in finding that the conveyance was a conditional (onerous) donation; and that the trial court erred in removing the restrictions on the resubdivision of Parcel B. For the following reasons, we affirm the judgment of the trial court. Please refer to Appendices A, B, C, and D found at the end of this opinion.
The testimony in the record indicates that in the mid 1980s, St. Charles Parish initiated several studies (feasibility and corridor) to determine the feasibility of constructing a new traffic artery on the east bank. This proposed roadway was called the East-West Roadway, and also sometimes the Earhart Expressway or Extension, because of possible plans to eventually connect this proposed roadway to the existing Earhart Expressway in Jefferson Parish. Several alternate routes have been studied. Plaintiffs, who own a parcel of land (Parcel B) located near Ormond Boulevard, were approached along with other landowners by the Parish, in the Parish's attempt to defray some of the costs of building the roadway.
It is undisputed that on December 29, 1986, the plaintiffs signed an Act of Donation conveying the land in question to the Parish of St. Charles, recorded in the Conveyance Office of the Parish at COB 365, folio 825. The central question to this appeal is whether the Act of Donation was a conditional (onerous) donation inter vivos, and thus revocable for the donee's failure to perform the condition; or whether the Act of Donation was a dedication of streets for public use as per LSA-R.S. 33:5051, and thus not revocable.
Although similar in their practical operation, dedications for public use and donations to public subdivisions or corporations conditioned upon a particular public use are not governed by the same legal rules. A dedication may be implied as well as express, and the dedicated property becomes vested in the public. Hence, it is considered to be irrevocable. Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961).
The organ of the Court in that instance said:
"The donation inter vivos, on the other hand, transfers the title to the donee, even though the donation is conditioned on a particular public use and it must conform to the provisions of the Civil Code on the *655 subject in order to be effective. When the donor has imposed charges upon the donee, there is no necessity for an express stipulation or a reverter clause as the Civil Code (Article 1559) vests in the donor the right to claim a revocation for failure of the donee to comply with the conditions of the gift. * * *
The circumstance that the donation is in favor of a political corporation and is conditioned upon a particular public use does not affect the right of rescission given the donor under the Civil Code." Id., at p. 890.
The above case makes clear that a donation of immovable property to a public entity for public use is not automatically considered a dedication for public use.
Statutory (or express) dedication is found in LSA-R.S. 33:5051.[1] Statutory dedication of land to public use occurs when the landowner files a subdivision plat which conforms with LSA-R.S. 33:5051's requirements, even when no language in the subdivision plat formally dedicates the land to public use. "Implied" dedication of land to public use occurs when there has been no substantial compliance with the subdivision plat statute, but the landowner has nonetheless sold property by reference to a recorded plat. White v. Kinberger, 611 So.2d 810 (La.App. 3rd Cir.1992), writ denied 614 So.2d 84 (La.1993). Both forms of dedication require the reference to a recorded subdivision map or plat.
The following Civil Code articles govern donations inter vivos pertinently to the instant case: Articles 1523, 1527, 1536, 1540, 1559 and 1566.[2]
*656 The document conveying the land to St. Charles Parish is a three page instrument entitled "Act of Donation," and complies with Civil Code article 1536. It specifically refers to Parish Ordinance 86-10-17 (Appendix B), which in turn is a one page document which ordains:
SECTION I: That the Parish has attempted to obtain property from landowners in connection with the East/West Road in Destrehan.
SECTION II: That Mary Hotard, wife of/and E.L. Holmes has offered to donate property to the Parish to be used for the construction of the East/West Road in Destrehan.
Neither the Ordinance nor the Act of Donation contains any reference to a subdivision map or plat, nor was one filed into the conveyance records attached to either one.
When the fact of dedication is doubtful, one must discern the intent of the parties from their conduct and the record as a whole. Garrett v. Pioneer Production Corp., 390 So.2d 851 (La.1980).
The absence of a recorded map in conjunction with or in reference to the Act of Donation defeats the possibility that the Act of Donation could be also a dedication to public use. Further, we note in the minutes of the St. Charles Parish Planning and Zoning Commission, ostensibly dated 8/7/86 (R @ 18):
PZS-86-29
REQUESTED BY: E.L. & Mary Holmes
REQUEST: Resubdivision of Parcel B into Parcels B-1 and B-2 in Section 13, T12S-R8E St. Charles Parish, Louisiana (located on the proposed East-West Roadway approximately 581 feet from Ormond Blvd.) Zoning District MS.
Mr. Tommy Berthelot spoke for this request. Mr. Holmes wants to divide the property into two parcels, one to be used for a nursing home.
A motion was made by Commissioner Waldreip second by Commissioner Charles to table this request until donation of portions of the property are legally dedicated to be used for the proposed East/West Roadway. (Emphasis ours)
We find the emphasized language to be indicative that the Commission realized that a donation and a dedication are two distinct legal acts. Furthermore, the record does not contain any further mention of a dedication occurring.
Therefore, we affirm the trial court's finding that the land in question was donated to St. Charles Parish, and was not dedicated to public use.
The appellant further urges that the trial court erred in finding that the donation was conditional, because the Act of Donation itself did not contain a condition. As noted above, the Act of Donation specifically referenced Parish Ordinance 86-10-17, and thus is deemed to have incorporated the above Ordinance by reference. Action Finance Corp. v. Nichols, 180 So.2d 81 (La.App. 2nd Cir.1965). The Ordinance itself recognizes that the Donation was for the specific purpose of constructing the East-West Roadway. Thus, the trial court correctly held that the donation was conditional, and thus revocable.
The jurisprudence dealing with conditional donations has held that where no time is specified for fulfillment of the condition, the condition must be fulfilled within a reasonable time subject to the circumstances surrounding the gift. (cites omitted.) Frame v. Shreveport Anti-Tuberculosis League, 538 So.2d 684 (La.App. 2nd Cir.1989), writ denied 541 So.2d 896 (La.1989).
In the instant case, the Act of Donation contained no time limit for the building *657 of the roadway. The trial court held that the plaintiffs should have been able to reasonably expect the road to be built within their lifetimes, and noted that eight years had passed between the Donation and the trial. The court allowed the Parish one year from the finality of its judgment to build the road, or the donation would be revoked in favor of plaintiffs.
Various St. Charles Parish officials testified that the proposed road has been planned, and several feasibility and corridor studies have been done, but no funding has been allocated for the road, and none of the testifying officials anticipated receiving funding in the future at any time. The defendant argues in brief that road projects sometime necessarily require as much as 30-40 years between the planning and end of construction, and that a time period of nine years is unreasonable. We agree with the trial court's finding that the defendants should be allowed this additional year to have a reasonable time in which to fulfill the condition of the donation. We see no manifest error in the trial court's holding.
Last, the trial court ordered lifted the restriction placed on the resubdivision of Parcel B. Parcel B was subdivided into Parcels B-1 and B-2 by Parish Ordinance 88-2-5 (Appendix C), which subdivided the parcel: "with the stipulation that no certificate of occupancy be issued for Lot B-2 until such time as the proposed East/West Roadway has been constructed and approved by the Parish Engineers." The resubdivision left Parcel B-2 landlocked, without access to a public roadway (Parcel B-1 was sold to a developer for a nursing home). The resubdivision restriction leaves the property undevelopable and out of commerce until the East/West Roadway is built. The resubdivision ordinance was adopted about a year and a half after the Act of Donation was executed. Defendant argues that the plaintiff, by his own act of resubdivision, rendered himself landlocked. We believe the record is clear that when the resubdivision was passed in February 1988, the plaintiffs reasonably believed that the East/West Roadway would be built soon after, solving the landlocked condition of Parcel B-2. We agree that the restriction must be logically lifted in conjunction with the revocation of the donation, because under the restriction, the occupancy is delayed until the roadway is built, and the revocation of the donation necessarily renders the construction of the roadway impossible. If the restriction is not lifted along with the revocation of the donation, the property will remain undevelopable. The law is clear that when a landowner becomes landlocked due to a voluntary act or omission of his own, the fronting estate is not bound by law to furnish the landlocked estate gratuitous access to the roadway. Civil Code Article 693; LeBlanc v. Thibodeaux, 615 So.2d 295 (La. 1993). (We note that when the donation is revoked, plaintiff regains title to the strip of land labelled "Proposed East-West Roadway" (see Appendix "D"), one end of which adjoins the driveway from the nursing home on Parcel B-1 to Plantation Road.) Any roadway plaintiff would build would have to conform to all applicable law, including St. Charles Parish Ordinances.
For the reasons stated, we affirm the judgment of the trial court and assess costs to the defendant.
AFFIRMED.
*658 
*659 
*660 
*661 
*662 
*663 
NOTES
[1] § 5051. Platting land into squares or lots before sale; filing map of land

Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same, cause the real estate to be surveyed and platted or subdivided by a licensed surveyor or civil engineer into lots or blocks, or both, each designated by number, and set stakes, which shall be permanent in nature, at all of the corners of every lot and block thereof, properly marked so as to designate the correct number of each lot and block; write the legal description of the land on the plat or map, and cause to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish a correct map of the real estate so divided, which map shall contain the following:
(1) The section, township, and range in which such real estate or subdivision thereof lies according to government survey.
(2) The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
(3) The number of each lot or subdivision of a square and its dimensions in feet and inches.
(4) The name of each street and alley and its length and width in feet and inches.
(5) The name or number of each square or plat dedicated to public use.
(6) A certificate of the parish surveyor or any other licensed surveyor or civil engineer of this state approving said map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.
(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use.
[2] These articles read as follows:

Art. 1523. Gratuitous, onerous and remunerative donations; definitions
There are three kinds of donations inter vivos:
The donation purely gratuitous, or that which is made without condition and merely from liberality;
The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered.
Art. 1527. Charges or conditions imposed by donor
The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals.
Art. 1536. Donation of immovables or incorporeals, form required
An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.
Art. 1540. Donations effective from date of acceptance
A donation inter vivos shall be binding on the donor, and shall produce effect only from the date of its being accepted in precise terms.
The acceptance may be made during the lifetime of the donor by a posterior and authentic act, but in that case the donation shall have effect, with regard to the donor, only from the day of his being notified of the act establishing that acceptance.
Art. 1559. Causes for revocation or dissolution
Donation [Donations] inter vivos are liable to be revoked or dissolved on account of the following causes:
1. The ingratitude of the donee;
2. The non-fulfillment of the eventual conditions, which suspend their consummation;
3. The non-performance of the conditions imposed on the donee;
4. The legal or conventional return.
Art. 1566. Non-fulfillment of potestative conditions; suit to dissolve
But if the conditions be potestative, that is, if the donee is obliged to perform or prevent them, their non-fulfillment does not, of right, operate a dissolution of the donation; it must be used for and decreed judicially.